IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 1 1 2007

JAMES N. HATTEN, Clerk
By: _____ 
Deputy Clerk

INDYMAC BANK, FSB,                    )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )
                                       )
AMERICAN DISCOUNT                      )
MORTGAGE, INC., JOSEPH W.              )
MILLS, TONI PETERKIN,                  )
TIRLINDA ADWATER, KATRICE              )
WIGGINS, KRISTEN WALKER,               )
LISA MOLLER, LYDIA WIGGINS,            )   Civil Action No.
DAMON SHEPPARD, TERRINA                )   1:07-CV-0809
CHISM, THEA PRICE, SHUNYA              )
BREWER, SUSAN J. FAIRLEY,              )
FAIRLEY APPRAISAL SERVICES,            )
CEDRIC ALSTON, CMA                     )   BBM
APPRAISALS, LLC, SEAN O'DELL,          )
MATT SANDER, LOGAN                     )
APPRAISALS, INC., KENNY RAY            )
ROBERTS, ASSOCIATED                    )
APPRAISER GROUP, INC., KR              )
APPRAISAL SERVICE, INC., SEAN          )
COFFEE, BARRETT MATTHEWS,              )
CJ REAL ESTATE APPRAISAL,              )
LLC, SHERRY TURNER, and                )
DECISION ONE PROPERTIES, INC.,         )
                                       )
          Defendants.

----------------------------------------

## COMPLAINT

Plaintiff IndyMac Bank, FSB, states its Complaint as follows:

## PARTIES AND SUBJECT MATTER JURISDICION

1.

Plaintiff IndyMac Bank, FSB ("IndyMac") is a federally-chartered savings bank with its home office in the State of California.

2.

Upon information and belief, Defendant American Discount Mortgage, Inc. ("American Discount") is a Georgia corporation with its principal place of business in the State of Georgia.

3.

Upon information and belief, Defendant Joseph W. Mills is a citizen of the State of Georgia.

4.

Upon information and belief, Defendant Toni Peterkin is a citizen of the State of Georgia.

5.

Upon information and belief, Defendant Tirlinda Adwater is a citizen of the State of Georgia.

6.

Upon information and belief, Defendant Katrice Wiggins is a citizen of the State of Georgia.

~Doc# 737392.1~

7.

Upon information and belief, Defendant Kristen Walker is a citizen of the State of Georgia.

8.

Upon information and belief, Defendant Lisa Moller is a citizen of the State of Georgia.

9.

Upon information and belief, Defendant Lydia Wiggins is a citizen of the State of Georgia.

10.

Upon information and belief, Defendant Damon Sheppard is a citizen of the State of Georgia.

11.

Upon information and belief, Defendant Terrina Chism is a citizen of the State of Georgia.

12.

Upon information and belief, Defendant Thea Price is a citizen of the State of Georgia.

~Doc# 737392.1~

13.

Upon information and belief, Defendant Shunya Brewer is a citizen of the State of Georgia.

14.

Upon information and belief, Defendant Susan Fairley is a citizen of the State of Georgia

15.

Upon information and belief, Defendant Fairley does business as Fairley Appraisal Services.

16.

Upon information and belief, Defendant Cedric Alston is a citizen of the State of Georgia.

17.

Upon information and belief, Defendant CMA Appraisals, LLC, is a Georgia corporation with its principal place of business in the State of Georgia.

18.

Upon information and belief, Defendant Sean O'Dell is a citizen of the State of Georgia.

19.

Upon information and belief, Defendant Matt Sander is a citizen of the State of Georgia.

20.

Upon information and belief, Defendant Logan Appraisals, Inc., is a Georgia corporation with its principal place of business in the State of Georgia.

21.

Upon information and belief, Defendant Kenny Ray Roberts is a citizen of the State of Georgia.

22.

Upon information and belief, Defendant Associated Appraiser Group, Inc., is a Georgia corporation with its principal place of business in the State of Georgia.

23.

Upon information and belief, Defendant KR Appraisal Service, Inc., is a Georgia corporation with its principal place of business in the State of Georgia.

24.

Upon information and belief, Defendant Sean Coffee is a citizen of the State of Georgia.

~Doc# 737392.1~

25.

Upon information and belief, Defendant Barrett Matthews is a citizen of the State of Georgia.

26.

Upon information and belief, CJ Real Estate Appraisal, LLC is a Georgia limited liability company with its principal place of business in Georgia.

27.

Upon information and belief, Defendant Sherry Turner is a citizen of the State of Georgia.

28.

Upon information and belief, Defendant Decision One Properties, Inc., is a Georgia corporation with its principal place of business in the State of Georgia.

29.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as Plaintiff and all Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

~Doc# 737392.1~

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### 30.

This case arises out of a series of loan transactions ("Loans") involving multiple borrowers ("Borrowers"). Defendants induced IndyMac to enter into these Loans by making various misrepresentations, including as to the respective Borrowers' assets, credit history, employment, and intention regarding occupancy of the properties that secured the Loans. In many instances, the value of the properties that secured the Loans was also materially overstated.

### 31.

On or about March 7, 2005, IndyMac made a loan to Keisha Williams in the original principal amount of $99,760 and received as collateral a security deed to certain real property located at 6326 Wedgeview Drive, Tucker, Georgia 30084.

### 32.

On or about April 20, 2005, IndyMac made two loans to Tara Carnes, one in the original principal amount of $91,440 and the other in the original principal amount of $22,860, and received as collateral a security deed to certain real property located at 6359 Wellington Walk Way, Lithonia, Georgia 30058.

7

33.

On or about April 29, 2005, IndyMac made a loan to Rose Royster in the original principal amount of $150,400 and received as collateral a security deed to certain real property located at 2541 Cascade Road Atlanta, Georgia 30311.

34.

On or about May 13, 2005, IndyMac made a loan to Emeka Umeugo in the original principal amount of $172,900 and received as collateral a security deed to certain real property located at 2042 Juanita Square, Decatur, Georgia 30032.

35.

On or about May 23, 2005, IndyMac made two loans to Patricia Burton, one in the original principal amount of $182,400 and the other in the original principal amount of $45,600, and received as collateral a security deed to certain real property located at 7092 Sir Charles Court, Riverdale, Georgia 30274.

36.

On or about May 27, 2005, IndyMac made a loan to Robert Prater in the original principal amount of $89,600 and received as collateral a security deed to certain real property located at 21 Headland Court, Rockmart, Georgia 30153.

8

37.

On or about May 31, 2005, IndyMac made a loan to Todd Johnson in the original principal amount of $680,000 and received as collateral a security deed to certain real property located at 3233 Bagley Passage, Duluth, Georgia 30097.

38.

On or about June 16, 2005, IndyMac made a loan to Carlton Bellamy in the original principal amount of $123,300 and received as collateral a security deed to certain real property located at 3099 Delowe Drive, Atlanta, Georgia 30344.

39.

On or about June 30, 2005, IndyMac made a loan to Jerry Scott in the original principal amount of $58,000 and received as collateral a security deed to certain real property located at 1933 Yorktown Circle, Atlanta, Georgia 30349.

40.

On or about June 23, 2005, IndyMac made a loan to Dexter Neal in the original principal amount of $158,400 and received as collateral a security deed to certain real property located at 3844 Laurel Crest Drive, Snellville, Georgia 30039.

41.

On or about June 24, 2005, IndyMac made two loans to Scott Anderson, one in the original principal amount of $185,600 and the other in the original principal

9

amount of $46,400, and received as collateral a security deed to certain real property located at 374 Joseph E. Lowery Boulevard, Atlanta, Georgia 30314.

42.

Also on or about June 24, 2005, IndyMac made two loans to Randall Duffey, one in the original principal amount of $77,520 and the other in the original principal amount of $20,000, and received as collateral a security deed to certain real property located at 30 Porter Court, Hampton, Georgia 30028.

43.

On or about June 30, 2005, IndyMac made two loans to Tougie Brown, one in the original principal amount of $123,300 and the other in the original principal amount of $30,800, and received as collateral a security deed to certain real property located at 3686 Jeneen Terrace, Douglasville, Georgia 30134.

44.

On or about July 29, 2005, IndyMac made two loans to Craig Peterkin, one in the original principal amount of $240,000 and the other in the original principal amount of $60,000, and received as collateral a security deed to certain real property located at 1074 Arlington Avenue, Atlanta, Georgia 30310.

45.

On or about August 2, 2005, IndyMac made two loans to Taurean Thorpe, one in the original principal amount of $256,000 and the other in the original

~Doc# 737392.1~

principal amount of $64,000, and received as collateral a security deed to certain
real property located at 1374 Donnelly Avenue, SW, Atlanta, Georgia 30310.

46.

On or about August 31, 2005, IndyMac made two loans to Yalanda Lewis,
one in the original principal amount of $111,920 and the other in the original
principal amount of $27,980, and received as collateral a security deed to certain
real property located at 5107 Ash Street, Forest Park, Georgia 30297.

47.

On or about September 1, 2005, IndyMac made two loans to Walt Davis,
one in the original principal amount of $94,320 and the other in the original
principal amount of $23,580, and received as collateral a security deed to certain
real property located at 2242 Wagon Wheel Trail, Statham, Georgia 30666.

48.

On or about September 23, 2005, IndyMac made a loan to Sharif Pleasant in
the original principal amount of $122,000 and received as collateral a security deed
to certain real property located at 1763 Graystone Drive, Hampton, Georgia 30228.

49.

On or about October 7, 2005, IndyMac made a loan to Ayanna Dixon in the
original principal amount of $111,500 and received as collateral a security deed to
certain real property located at 5793 Antelope Trail College Park, Georgia 30349.

~Doc# 737392.1~

50.

On or about October 31, 2005, IndyMac made two loans to Tanika Ferrell, one in the original principal amount of $116,800 and the other in the original principal amount of $29,200, and received as collateral a security deed to certain real property located at 4977 Lake Ridge Trail, Lilburn, Georgia 30047.

51.

On or about October 31, 2005, IndyMac made two loans to Anthony Herbert one in the original principal amount of $244,000 and the other in the original principal amount of $61,000, and received as collateral a security deed to certain real property located at 530 Norfolk Street, NW, Atlanta, Georgia 30314.

52.

On or about November 4, 2005, IndyMac made two loans to Andre Jones, one in the original principal amount of $100,000 and the other in the original principal amount of $25,000, and received as collateral a security deed to certain real property located at 6543 Bussell Way, Riverdale, Georgia 30274.

53.

On or about November 15, 2005, IndyMac made two loans to Cynthia Abray, one in the original principal amount of $120,000 and the other in the original principal amount of $30,000, and received as collateral a security deed to certain real property located at 2506 Cherrywood Lane, Marietta, Georgia 30060.

54.

On or about November 29, 2005, IndyMac made two loans to Ryan Turner, one in the original principal amount of $208,000 and the other in the original principal amount of $52,000, and received as collateral a security deed to certain real property located at 1232 Martin Luther King, Jr. Drive, Atlanta, Georgia 30314.

55.

Each of the Loans was submitted to IndyMac by American Discount.

56.

American Discount employed loan officers who submitted certain information to IndyMac in connection with the Loans ("Loan Officers"), including information about the Borrowers' respective assets, credit history, employment, and intention with respect to occupancy of the properties that secured the Loans.

57.

Toni Peterkin was the Loan Officer with respect to the Loans to Scott Anderson, Craig Peterkin, and Carlton Bellamy.

58.

Tirlinda Adwater was the Loan Officer with respect to the Loan to Sharif Pleasant, Tougie Brown, Ayanna Dixon and Walt Davis.

13

59.

Katrice Wiggins was the Loan Officer with respect to the Loans to Anthony Herbert, Dexter R. Neal, Todd Johnson, Keisha Williams, and Tara Carnes.

60.

Kristin Walker was the Loan Officer with respect to the Loan to Andre Jones.

61.

Lisa Moller was the Loan Officer with respect to the Loan to Jerry Scott.

62.

Lydia Wiggins was the Loan Officer with respect to the Loan to Rose Royster and Emeka Umeugo.

63.

Damon Sheppard was the Loan Officer with respect to the Loans to Yalanda Lewis.

64.

Terrina Chism was the Loan Officer with respect to the Loans to Taurean Thorpe.

65.

Thea Price was the Loan Officer with respect to the Loans to Patricia Burton, Ryan Turner, Cynthia Abray, and Robert Prater.

66.

Shunya Brewer was the Loan Officer with respect to the Loans to Tanika Ferrell.

67.

As a precondition to making the Loans, IndyMac required appraisals for each of the Loans.

68.

American Discount submitted appraisals to IndyMac for each of the Loans (collectively, the "Appraisals").

69.

IndyMac relied upon the Appraisals in making the Loans.

70.

On or about April 4, 2005, Associated Appraiser Group, Inc. and KR Appraisal Service Inc. provided the Appraisal for the Loan to Carlon Bellamy. Kenny Ray Roberts rendered the Appraisal.

71.

On or about April 25, 2005, Logan Appraisals, Inc., provided the Appraisal for the Loans to Taurean Thorpe. Matt Sanders rendered the Appraisal.

72.

On or about May 20, 2005, CMA Appraisals, LLC, provided the Appraisal for the Loan to Jerry Scott. Sean O'Dell rendered the Appraisal, under the supervision of Cedric M. Alston.

73.

On or about June 3, 2005, Fairley Appraisal Services, Inc., provided the Appraisal for the Loans to Scott Anderson. Kenny Ray Roberts rendered the Appraisal, under the supervision of Susan J. Fairley.

74.

On or about July 21, 2005, KR Appraisal Service Inc. provided the Appraisal for the Loans to Craig Peterkin. Kenny Ray Roberts rendered the Appraisal.

75.

On or about October 7, 2005, CJ Real Estate Appraisal, LLC, provided the Appraisal for the Loans to Anthony Herbert. Sean Coffee, under the supervision of Kenny Ray Roberts, rendered the Appraisal.

76.

On or about October 30, 2005, Decision One Properties, Inc., provided the Appraisal for the Loans to Anthony Herbert. Barrett Matthews, under the supervision of Sherry Turner, rendered the Appraisal.

77.

All of the Borrowers subsequently defaulted on their respective Loans.

78.

After the Borrowers defaulted, IndyMac discovered that the Defendants made numerous material misrepresentations in connection with the loans, including, but not limited to, the following:

a.   with respect to the loan made to Keisha Williams, the Loan Officer submitted false information about the Borrower's credit and income;

b.   with respect to the loan made to Tara Carnes, the Loan Officer submitted false information about the Borrower's employment;

c.   with respect to the loan made to Rose Royster, the Loan Officer submitted false information about the Borrower's credit;

d.   with respect to the loan made to Patricia Burton, the Loan Officer submitted false information about the Borrower's credit and intentions with respect to occupancy;

17

e.      with respect to the loan made to Robert Prater, the Loan Officer submitted false information about the Borrower's employment;

f.      with respect to the loan made to Carlton Bellamy, the Loan Officer submitted false information about the value of the collateral;

g.      with respect to the loan made to Scott Anderson, the Loan Officer submitted false information about the Borrower's employment and credit and about the value of the collateral;

h.      with respect to the loan made to Randall Duffey, the Loan Officer submitted false information about the Borrower's credit and income;

i.      with respect to the loan made to Sharif Pleasant, the Loan Officer submitted false information about the Borrower's credit and transaction;

j.      with respect to the loan made to Craig Peterkin, the Loan Officer submitted false information about the Borrower's assets, employment, intentions with respect to occupancy, and otherwise misrepresented the value of the collateral and made other misrepresentations about the transaction;

k.      with respect to the loan made to Taurean Thorpe, the Loan Officer submitted false information about the Borrower's assets, employment, credit and intentions with respect to occupancy, and otherwise misrepresented the transaction, including the value of the collateral;

~Doc# 737392.1~

l.      with respect to the loan made to Yalanda Lewis, the Loan Officer submitted false information about the Borrower's credit;

m.      with respect to the loan made to Walt Davis, the Loan Officer submitted false information about the Borrower's credit and employment;

n.      with respect to the loan made to Sharif Pleasant, the Loan Officer submitted false information about the Borrower's credit and employment;

o.      with respect to the loan made to Ayanna Dixon, the Loan Officer submitted false information about the Borrower's credit;

p.      with respect to the loan made to Tanika Ferrell, the Loan Officer submitted false information about the Borrower's income;

q.      with respect to the loan made to Andre Jones, the Loan Officer submitted false information about the Borrower's credit and intentions with respect to occupancy;

r.      with respect to the loan made to Cynthia Abray, the Loan Officer submitted false information about the Borrower's intentions with respect to occupancy and otherwise misrepresented the transaction;

s.      with respect to the loan made to Emeka Umeugo, the Loan Officer submitted false information about the Borrower's assets, credit, employment and intentions with respect to occupancy;

19

t.    with respect to the loan made to Todd Johnson, the Loan Officer submitted false information about the Borrower's employment, credit and intentions with respect to occupancy, and otherwise misrepresented the transaction;

u.    with respect to the loan made to Jerry Scott, the Loan Officer submitted false information about the Borrower's credit and about the value of the collateral;

v.    with respect to the loan made to Tougie Brown, the Loan Officer submitted false information about the Borrower's credit and otherwise misrepresented the transaction;

w.    with respect to the loan made to Dexter Neal, the Loan Officer submitted false information about the Borrower's intentions with respect to occupancy and otherwise misrepresented the transaction;

x.    with respect to the loan made to Anthony Herbert, the Loan Officer submitted false information about the Borrower's credit, employment, and income and about the value of the collateral; and

y.    with respect to the loan made to Ryan Turner, the Loan Officer submitted false information about the Borrower's intentions with respect to occupancy and otherwise misrepresented the transaction.

20

79.

Defendant Mills specifically directed or participated or cooperated in the above-described actions taken on behalf of American Discount.

## COUNT ONE
## (Fraud)

80.

Plaintiff incorporates herein by reference paragraphs 1 through 79 of this Complaint.

81.

Defendants, either directly or through their employees or agents, made material misrepresentations of fact in connection with the Loans. These misrepresentations occurred through Defendants' provision to IndyMac of incomplete, false, and misleading information, including as described above with respect to the Borrowers' assets, credit history, employment, and intention with respect to occupancy of the properties that secured the Loans.

82.

Upon information and belief, Defendants knew that the information was false when it was provided to IndyMac.

83.

Upon information and belief, Defendants' misrepresentations were made with the intention to induce IndyMac to fund the Loans.

21

84.

IndyMac justifiably relied upon Defendants' misrepresentations to its detriment when it funded the Loans.

85.

IndyMac has been damaged as a result of its reliance upon Defendants' misrepresentations through having been fraudulently induced to fund the Loans in amounts grossly in excess of the collateral available to secure the Loans and the borrowers' ability to repay the Loan in the event of default.

86.

The actions of Defendants as described herein constitute willful misconduct, wantonness, malice, fraud, oppression, or a conscious indifference to consequences.

## COUNT TWO
## (Breach of Contract)

87.

Plaintiff incorporates herein by reference paragraphs 1 through 86 of this Complaint.

88.

Defendant American Discount is a party to a Seller Contract ("Contract"), as periodically amended, with IndyMac. The Contract incorporates the terms of the IndyMac Seller Guide ("Guide"), which is also periodically amended.

~Doc# 737392.1~

89.

Pursuant to the terms of the Contract , American Discount is obligated to indemnify, repurchase loans and/or pay damages to IndyMac under certain conditions. In particular, American Discount is liable to IndyMac for indemnification, repurchase of loans, and payment of all damages suffered by IndyMac as a result of American Discount's employees' or agents' acts, omissions, misrepresentations or breaches of various representations and warranties regarding the veracity and accuracy of the information submitted by American Discount.

90.

American Discount's employees and agents submitted false information to IndyMac, including as described herein.

91.

American Discount's submission of false information to IndyMac constituted a material breach of the Contract.

92.

As a direct result of American Discount's breach of the Contract, IndyMac has suffered injury to its property and business through having been fraudulently induced by American Discount to fund the Loans in amounts grossly in excess of the collateral available to secure the Loans and in excess of the Borrowers' ability to repay the Loans.

23

## COUNT THREE
### (Professional Negligence)

93.

Plaintiff incorporates herein by reference paragraphs 1 through 92 of this Complaint.

94.

The Appraisers were aware of the purpose of the Appraisals — that is, to accompany loan applications to enable both the originating lender and subsequent purchasers of the Loans to evaluate the suitability of the subject properties as security for the Loans and to determine whether to approve and fund the Loans.

95.

The Appraisers intended that IndyMac would rely on the Appraisals in its decisions to go forward with and to fund the Loans.

96.

IndyMac relied upon the Appraisals when it funded the Loans.

97.

Numerous representations made in the Appraisals were, in fact, untrue and served materially to overstate the value of the subject properties, including representations with respect to each of the Appraisals that (1) the three properties identified as comparable sales were "the most recent and most similar sales

24

available" and "good indicators of value for the subject property"; (2) the appraiser "researched the subject market area" and "selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis" and "made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation"; (3) "the appraiser took into consideration the factors that have an impact on value in developing an estimate of the market value in the appraisal report"; (4) "the appraiser performed the appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of the Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply." In addition, in many instances, the purported sales comparables were not accurately described.

98.

IndyMac reasonably and actually relied to its detriment upon the Appraisals in making its decision to go forward with and to fund the Loans.

99.

Had the true facts been disclosed, IndyMac would not have funded the Loans.

25

100.

The Appraisers had a duty to act as professionals in rendering their opinions

on market value of the subject properties and had a duty to prepare the Appraisals

in accordance with governing regulations, and the custom, practices, and standards

of conduct prevailing in the appraisal industry.

101.

The Appraisers knew that their opinions on the market value of the subject

properties would be relied upon by a lender — in this case, IndyMac — in making

its decision whether to go forward with and to fund the Loans.

102.

The Appraisers had a duty to exercise that degree of care and skill

acceptable to the appraising community generally under the same or similar

circumstances in like surrounding conditions.

103.

The Appraisers failed to exercise that degree of care and skill acceptable to

the appraising community generally under the same or similar circumstances in

like surrounding conditions.

104.

The Appraisers knew that the information he was providing would be used

and relied upon by IndyMac in deciding to fund the Loans.

26

105.

The Appraisers breached their duty to provide accurate information in the valuation of the Subject Properties by rendering materially inaccurate opinions on the market value of the Subject Properties, opinions that were substantially overstated and not determined in accordance with professional standards.

106.

IndyMac relied upon the Appraisers' opinions in accordance with the duty of care implied by the law and the custom of the appraisal industry, and believed that the information submitted by the Appraisers was true and had been prepared and reviewed in accordance with the professional standards prevalent in the appraisal industry.

107.

As a direct and foreseeable result of the Appraisers' breach of their professional duty, IndyMac has been damaged in an amount to be proved at trial.

## COUNT FOUR
### (Negligent Misrepresentation)

108.

Plaintiff incorporates herein by this reference paragraphs 1 through 107 of this Complaint.

### 109.

The Appraisers negligently supplied false information, including as described in paragraph 97 above.

### 110.

IndyMac was among the class of persons that the Appraisers knew would rely upon the Appraisals.

### 111.

IndyMac reasonably relied upon the Appraisals in making its decision to fund the Loans.

### 112.

As a direct and foreseeable result of the Appraisers' conduct as described above, IndyMac has been damaged in an amount to be proved at trial.

## COUNT FIVE
### (Expenses of Litigation)

### 113.

Plaintiff incorporates herein by this reference paragraphs 1 through 112 of this Complaint.

### 114.

Defendants have acted in bad faith, have been stubbornly litigious and have caused IndyMac unnecessary trouble and expense.

~Doc# 737392.1~

115.

IndyMac is entitled to an award of its attorney's fees and costs pursuant to O.C.G.A. §13-6-11.

WHEREFORE, IndyMac prays for the following relief:

(a)     That the Court enter a judgment in favor of IndyMac and against each of the Defendants in an amount to be determined at trial, including compensatory damages, and punitive damages as appropriate, together with prejudgment interest, attorney's fees, expenses, and costs; and

(b)     That IndyMac have such other and further relief as this Court deems just and proper.

This 11th day of April, 2007.

Gregory M. Taube
Georgia Bar No. 699166

Attorney for Plaintiff
IndyMac Bank, F.S.B.

NELSON MULLINS RILEY & SCARBOROUGH, L.L.P.
999 Peachtree Street, N.E., Suite 1400
Atlanta, Georgia 30309
(404) 817-6000

~Doc# 737392.1~